Chancellor D. Johnson
delivered!the opinion of the court.
The complainants are creditors of the defendant’s testator, and the defendant is his widow and executrix. The object of the bill is to charge certain real and personal estates, of which the testator died possessed, (and which the defendant claims under a marriage settlement between herself and her testator, as a separate property,) with the payment of the testator’s debts. This settlement is dated in 1801, and in contemplation of an intended marriage between the defendant and her testator. It recites, that the defendant, (then Mary Fraser, the daughter of Dr. James Fraser, and his wife Mary,) was “lawfully interested in, and will be entitled equally with, her brothers and sisters, to certain undivided real and personal estates, .derived from her late uncle, R. R. Ashe, and her grandmother, Sarah Odingsell, the particulars whereof, the situation and quantity' of land, and the respective names of the negroes and personal pro* perty, cannot, at present, be actually ascertained or known ; but when, and as soon as the same be ascertained and known, an actual inventory, schedule, and account thereof, is intended to be hereunto annexed, as designating the property hereby settled and conveyed.” Then follows, in the usual form, a clause of bargain, sale, transfer, and assignment, of all the interest of the defendant, in the said estates, to trustees, to the' use of defendant and her testator, for their joint lives, to the survivor for life, and remainder in fee, to the children of the njarrtage, • There are also covenants for *276 farther assurance, and on the part of the testator, to settle all e? tates that he might acquire in virtue of his marital rights to the same uses.
This settlement was recorded within the time prescribed by the registry act; and on the margin of the record book, is inserted the names of twenty-four negroes, under which is written, “ Schedule inserted this 29th July, 1811.” But it does not appear from what source they were derived ; but certainly, from the estates of II. 11. Ashe, or Sarah Odingsc.il, or both ; and these negroes are part of the property now in controversy. The defendant acquired slave» from both estates in virtue of his marital rights, and a plantation called Gray’s Hill, from the estate of R. R. Ashe ; so that the subject of litigation consists of two distinct classes of property derived from different sources, and under different circumstances, and I have attempted to separate the facts, connected with each, from the confused mass of documents before me, and the brief on which the cause was argued.
1st. As to the property derived from the estate of R. R. Ashe.
R. R. Ashe’s will is dated in 1787 ; soon after which, he is represented to have died. By this will, he gives to his sister, Mary Fraser, wile of Dr. James Fraser, and mother of defendant, all the residue of his estate. This consisted, in part, of the plantation called Gray’s Hill, and about sixty-eight slaves; but the will was executed in the presence of two witnesses only; and did not, there, fore, pass the real estate, which, under the act of distributions, descended to his mother, Sarah Odingsell. Not being disposed fo avail herself of this right, and intending to give effect to the will, Sarah OdiogseiT, by deed dated in 1798, couveyed to trustees, amongst other things, the plantation called Gray’s Hill, to the separate use of her daughter, ttie said ’.vlary Fraser, for life, remainder in fee, to the heirs of her body lawfully begotten.
In 1798, the said Dr. Jamos Fraser, and his wife Mary, filed their bill m the Federal Court of the United States, for the district of South Carolina, for the purpose of obtaining possession of the personal estate so bequeathed to her by the said R. R. Ashe, and by the decree of that court, the said personal estate was directed to be settled to the use of the said James and Mary, during their joint lives — the children of the marriage to be maintained and educated out of the income — then to the use of the said Mary for life, if she survived her husband ; and after her death, to be equally divided amongst their children. A general power was also given to the trustees to sell apd substitute property, with the consent of the said *277 James and Mary. In pursuance of this decree, formal deeds to trustees were duly executed, and such was the condition of this estate at the time of the settlement and marriage between the defend, ant and her testator. _ ' ■
Under this deed and deeree, the said James and Mary took possession ot the estates, real and personal, and with the approbation of the trustees, sold part of the estates, and purchased slaves and other property, as a substitute. They invested the surplus income also in property to the uses of the settlement. After the death of the said James, the said Mary being disposed to release her life interest in a part of the estate, and to make partition thereof amongst her children, petitioned the court for permission to do so, and an order for that purpose was accordingly made. 'Under this order a portion of the slaves was allotted to the defendant, and went into the possession of her testator.
Mary Fraser died in 1812, and after her death, (all the executors of R. R. Ashe having before died,) the defendant’s testator obtained letters of administration, de bonis non, with the will annexed, of the said R. R. Ashe, and thereupon took possession of all the estate of which the said Mary Fraser died possessed, derived from the estate of the said R. R. Ashe, as well as the property sub-stitutod, and that acquired from-the income, notwithstanding there was then a trustee under the deed executed by the order of the court, to whom the duty and making distribution properly belonged.
In 1S16, Alexander G. Fraser, one of the children of James and Mary Fraser, filed his bill in chancery, for, amongst other things, an account and settlement of this estate, and such proceedings were had thereon, that in 1818, a sale of the real estate, for the purpose of partition, was made, which produced sixty.five thousand dollars. At this sale, defendant’s testator purchased two plantations, Rest Park and Gray’s Hill, at thirty-one thousand dollars,' for which he gave bond and mortgage of the premises; but I have not been able to ascertain, from the brief or documents, the separate price of either; nor whether the purchase money was ever paid.
Of this estate, the defendant was entitled to one eighth part, and twenty-seven negroes, valued at four thousand one hundred and fifty .dollars, was apportioned to her as her share of the personalty ; and these negroes, and Gray’s Hill, constitute the portion of the estate now in controversy.
2d, As to the estate deriyed from Sarafe Odingsell,
*278 Sarah Odingsell was alive, and present at the marriage belwééii the defendant and her testator, but was then very old and infirm, and had before executed her vt ill, which remained unrevoked ancí uncaucelled, at the time of her death. By this will, she devised the residue of her estate to be equally divided between the defend, ant and three of her sisters ; and it is evident that the settlement between defendant and her testator refers to this state of facts, when it recites that she is “ lawfully distrusted in, and will be entitled equally with, her brothers and sisters, to certain real and personal estates derived from her late undo, and her grandmother.” The defendant acquired some property under this will, of which her testator and husband obtained possession in his life time; and this, also, the complainants insist, is hable tor his debts.
The questions arising out of this state of lacts, and on which the case was argued, may be thus stated :
1st. Whether the settlement is not altogether void, on the ground that it was unaccompanied by a schedule, describing, particularly, the property intended to bo settled.
2d. Whether the settlement is not void as to the property derived from the estate oí Mrs. Odingsell, on the ground that the defendant had no interest in it, either vested or contingent, at the time, but á naked expectancy.
ad. Whether Gray’s Hill is liable for the testator’s debts.
The act of 1792, 2 Brev. Dig. 46, requires “ that all marriage contracts, deeds, and settlements, shall therein describe, specify,- and particularize, the real and personal estate thereby intended to be included, comprehended, conveyed, and passed, or shall have a schedule thereto annexed, containing a description, and the particulars and articles of the real and personal estate intended to be con. veyed and passed by such marriage contract,” dze , “ which said schedule shall be thereto annexed, and signed, executed, and deli, vered, by the parties therein interested, at the time of the signing, executing, and delivering the said marriage contract,” &e., “ and bo subscribed by the same witnesses who subscribed the said marriage contract,” &c., “ and shall be recorded therewith ; and’ in default of such schedule, and the recording thereof, the said marriage con. tract,” &c., “ shall be,- and the same arc hereby deemed and do-dared null and void, with respect to, and against, creditors and bona fide purchasers and mortgagees.”
The terms of the act, as well as the obvious policy on which it was founded, indicate, very clearly, that the legislature intended that property conveyed to the use,? ofa.pj.arriage settlement .should be *279 described either in the deed itself, or in a schedule annexed, with such certainty as to enable purchasers and creditors, or mortga.. gees, to distinguish it from the other property of the husband. This was necessary, because under the probable usage then, and certainly now, existing, settlements generally provide that the husband shall have the possession and use of the settled estate ; but it neves could have been intended to prohibit entirely, the settlement of uri* defined interests of the wife, or to require any other description than such as might serve to distinguish it from others. Slaves, for example, are usually distinguished by their names, ages, and families ; and 1 cannot suppose that it was intended by the act, that the lengih of the nose, aud the number of grey hairs in their heads, should enter into the description. But the case of Thomas and Heriot vs. Huggins et. al., decided by the Court of Appeals, in Charleston, Feuruary term, 1831, will better Serve the purposes of illustration. There, Daniel Cannon devised lo six of his grand children, all the use aud residue of his estate, to be equally divided betw ten them. Emily \\ akefield, one of them, in contemplation of a marriage with E. G. Thornes, before the partition of the es* tale, made a settlement, with bin consent, oi her interest in this legacy, describing it as a legacy left her by the will of her grandfather, in which it was provided, that the legacy should be received by tne trustees, lo be held and invested in other property to the use of the intended husband aud wile, for life, with a provision for-children ; and it was held that this was-a sufficient description of the property settled, within the meaning .of the act. It was the subject of transier and assignment, aud was incapable of a more mi* ¡ñute description.
What is this case? Under the decree of the Federal Court, the defendant was entitled, on the death of her mother, to an undivided interest in the estate of R. R. Ashe. INo.t being in possession of the estate, she could not be supposed to know of what it consisted, An accumulating fund was to be invested ; the trustees had authority to sell and re-invest, and whatever might' have been the de. scription ol the property l}ien, there was no’possibility- of knowing what it would be when her interest became vested in possession, It is described in the settlement, as “ certain real and personal estate derived from her late uncle, R. R. Ashe, which she was lawfully interested in, and will be entitled to, equally with her brothers and sisters.” Was it possible to give a more minute aud detailed áescription? Could any other description have pointed out more clearly to purchasers, creditors, and mortgagees, the property ia? *280 tended to be settled ? The same reasoning applies with even more force to the property derived from the estate of Sarah Odingself. In that case there was really nothing tangible or substantial to describe. Sarah Qdingsell had made her will, in which she had provided for the defendant, but she was then alive, and might change* alter, or revoke it, or dispose of her property in her life time; and whether that was the subject of a marriage settlement, I will now proceed to enquire.
The defendant, for tlie reason before stated, had no interest in any portion of the estate of Sarah Odingsell. The provision mad© for her by the will, was a naked possibility, which, according ter the general rule, is not the subject of grant or assignment. The case of a lessee, rvho covenanted to lease so many sheep at th© end of his term, is given as an illustration in which it was held, that the lessor could not grant them before the term was' ended. Corny. Dig. Grant, D. But it is most obvious, that the deed of' settlement pointed to this expectancy, and intended that whatever might be realized, should be secured to the use of the settlement; and if it were necessary, I should think it no force to construe this-into a covenant, on the part of the testator, to convey the property thus to be acquired, to the use of the settlement; but here it is un. necessary, as there is an express covenant on the part of the testator, that all property which he might acquire in right of his wife during their coveture should be conveyed and secured to the use of the settlement.
All the authorities agree,- that the testator was bound by this con-ven ant. It had for its consideration, marriage, the highest of which it is possible to conceive, and the act to be done, was lawful and possible. Nay, further, the husband is bound by his covenant to convey to the use of the wife, property which be, himself, may subsequently acquire. 2 Roper on Property, 29, et. seq. Lewis vs. Madocks, 17 Ves. 47 ; and equity would enforce it against him,. Is it good against the creditors of the husband ?
The testator having, in his lifetime, reduced the property to pos', session, the legal estate necessarily vested in him ; subject, nevertheless, to the equities of the wife, derived from the marriage contract ; and I take the rule to be, that although the claims of the as-signee of the husband, for valuable consideration, would be preferred to the claims of the wife, yet the equities of the wife would be preferred to the voluntary assignee of the husband, or to the claims of general creditors. This is exemplified in the cases of Jewson vs. Moulson, 2 Atk. 417, — Warral vs. Marlar, 1 P. W. 459, note; and *281 in Mitford vs. Mitford, 9 Ves. 99. Sir Wm. Grant, in-remarking on the rights of the assignees of bankrupt husbands in the dioses in action of the wife, says, that although the rights of the assignee of the husband, for a valuable consideration, may be preferred to the equities of the wife, yet he had always understood‘that the assigu. ment from the commissioners, like any other assignment by operation of law, passed his rights precisely in the same plight and condition as he possessed them. In Warral vs. Marlar, Lord Thur-low says, “ A Court of Equity has much greater consideration for an assignment actually made by. contract, than an assignment made by operation of law ; for as to the latter, when the equitable interest of the wife was transferred to the creditor, by mere opera, tion of law, the assignee stood exactly in the place of the husband, and was subject precisely to the same equity with respect to the wife.” The same distinction is maintained by Chancellor Kent,, in Murray vs. Lilburn, 2 Johnson’s Ch. 443. In Bosvil vs. Brander, 1 P. W. 458. The case was this : A feme sole mortgaged married, and her husband became bankrupt, and died, and the ques-tion was, whether the mortgage passed to the assignees, or inured to the wife ; and it was held, that it belonged to the assignees ; but it is said, that it would have been otherwise, if, by articles before marriage, it had been agreed that it should continue to the wife. Suppose that the testator had covenanted with a stranger, for va. luable consideration, to transfer and convey to him any property which he might even by possibility acquire from the estate of Sarah Odingsell, in right .of his wife. Can there be any question, that the covenants would be enforced against the creditors of the husband? In Finch vs. Earl of Winchelsea, 1 P. W. 277, it was held that an agreement to convey land was good against a subsequent judgment, at the suit of a creditor, although the legal estate remained in the debtor, on the ground, that the judgment was only a general security, and not a specific lien on the land. Tin* does not differ from the case in hand ; the consideration here is equally meritorious, and the covenant equally lawful and binding.
The facts connected with the plantation called Gray’s Hill, are Slot so clearly ascertained as to enable the court to pronounce a definitive judgment on that part of the case. If the sale was for the purpose of partition merely, and was only another mode of making partition, and the defendant’s interest in the real estate was equal to the value of this plantation, then I think she would be entitled to the land itself. In any other case I incline to think she would be entitled to a lien on it to the extent of her interest in the *282 real estate. These questions are intended, however, to be reserved until the coming in of the report of the master.
Grimke and Lanoe, for motion.
Memminsek, contra.
Filed 30th March, 1837.
It is, therefore, ordered and decreed, that so much of the decree of the Circuit Court, as relates to the personal estate mentioned in the pleadings, be, and the same is, hereby affirmed, and that it be. referred to the master or commissioner, to ascertain,— 1st. What was the interest of the defendant in the sales of the real estates derived from R. R. Ashe. 2d. At what price the Gray’s Hill plantation sold. 3d. Whether the bond and mortgage, given by the defendant’s testator for the purchase money, had been paid ; to whom, and how, the proceeds have been applied or disposed of. 4th. Whether the interest of the defendant in the real estate of the testator, has been credited to the testator on the settlement of the paid bond and mortgage.
DAVID JOHNSON.
We concur,
HENRY W. DESAUSSURE,
WM. HARPER.
J. Johnston, Ch., also concurred,